IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R.D. et al., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 11-2995 |
| | : | |
| SOUDERTON AREA SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

**Jones, II    J.**                                                                                                  **May 19, 2015**

## MEMORANDUM

In his Amended Complaint, (Dkt No. 11, Amen. Compl. [hereinafter AC]), Plaintiffs seek (Count I) injunctive relief and monetary damages based on a denial of E.D.'s substantive due process rights under the Individuals with Disabilities Education Improvement Act of 2004, PL 108-446, 118 STAT. 2647-2808 Dec. 3, 2004), 20 U.S.C. §§ 1401-82 ("the IDEA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* ("the Rehabilitation Act"), and 42 U.S.C. § 1983 ("section 1983), (AC ¶ 6); (Count II) monetary damages based on the School District's failure to supervise and/or train staff and employees to guard against a denial of educational benefits to E.D under section 1983, (AC ¶ 7); and (Count III) "to have the entire decision of the Juvenile Court vacated." (AC ¶ 8.)

Defendant moves to dismiss on various grounds including that (1) the relief requested in the Amended Complaint does not relate back to the original Complaint and thus certain claims are time-barred, (2) Counts II and III are related to an underlying state juvenile court proceeding which this Court does not have jurisdiction to address under the *Rooker-Feldman* doctrine,[1] (3) none of the claims state a cognizable claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt No. 12-1, Def.'s Brief in Support of Motion to Dismiss [hereinafter MTD].) Plaintiffs filed a Response. (Dkt No. 13, Pls' Resp. to Def.'s MTD [hereinafter Pl. Resp.].)

---

[1] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

1

After review of the Amended Complaint, Defendant's Motion and Brief, and Plaintiffs' Response, the Court GRANTS Defendant's Motion for the reasons set forth herein.

### I.      Standard of Review

Defendant moves for dismissal under both Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6).

#### a.  12(b)(1)

A complaint must be dismissed if the court lacks subject matter jurisdiction over the matter alleged therein. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing subject matter jurisdiction over the matter. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

A defendant can move to dismiss a claim under Rule 12(b)(1) where the claim would violate the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine requires that a state court judgment can only be reviewed by the United States Supreme Court or where otherwise provided by Congress, including final decisions of lower state courts. *E.B. v. Verniero,* 119 F.3d 1077, 1090 (3d Cir. 1997). A federal district court is divested of subject matter jurisdiction in two circumstances under *Rooker–Feldman:* "(1) if the claim asserted in federal court was 'actually litigated' in state court prior to the filing of the federal action; or (2) if it is 'inextricably intertwined' with a state court adjudication." *Hawkins v. Supreme Court of New Jersey,* 2005 WL 2133588, at *5 (D.N.J. 2005) *aff'd* 174 F. App'x 683 (3d Cir. 2006); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283-85 (2005).

Further, a district court may rule on a Rule 12(b)(1) motion when on the face of the pleadings it is clear that administrative remedies have not been exhausted. *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).

#### b.  12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).[2]

A statute of limitations may be raised in a motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994). In this case, Defendant's statute of limitations argument turns on whether or not Plaintiffs' Amended Complaint alleges claims that relate back to their original Complaint. The Court permitted Plaintiffs to file an Amended Complaint to clarify the current state of their claims following roughly three years of suspense. (Dkt No. 9.) Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment to a pleading relates back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Application of Rule 15(c)(1)(B) normally entails a "search for a common core of operative facts in the two pleadings." *Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir. 2004). "[T]he underlying question for a Rule 15(c) analysis is 'whether the *original* complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Meijer, Inc. v. Biovail Corp.,* 533 F.3d 857, 866 (D.C.Cir. 2008) (emphasis added)).

Rule 15(c) cannot "save a complaint that obscures the factual predicate and legal theory of the amended claim." *Glover*, 698 F.3d at 147-48 (citing *Bensel*, 387 F.3d at 310). "[T]he relation-back rule requires plaintiffs to show that the already commenced action sufficiently

---

[2] The Court notes that in Plaintiffs' Response to Defendant's Motion to Dismiss, Plaintiffs allege that "a complaint should never be dismissed for failure to state a claim unless the court is convinced beyond doubt that the Plaintiff can prove no set of facts to support a claim that would permit a recovery. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957)…" (Pl. Resp. at 5-6.) *Conley*'s "no set of facts" standard was explicitly overturned by the Supreme Court in *Twombly*, 127 at 1955. Candor to the tribunal requires that a lawyer not knowingly make a false statement of law to the tribunal. 204 Pa. Code R. 3.3. With this note, the Court expects that counsel will no longer use *Conley*'s "no set of facts" standard as support in future memoranda of law.

embraces the amended claims so that defendants are not unfairly prejudiced by these late-coming plaintiffs and that plaintiffs have not slept on their rights." *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995). The relation-back rule cannot be used as an "end-run around the statute of limitations." *Id.* at 1015.

### c. The IDEA

The IDEA ensures "that all children with disabilities have available to them free appropriate public education that emphasizes special education and related services that are designed to meet their unique needs and prepare them for further education, employment or independent living." 20 U.S.C. § 1400(d). "The goals of IDEA include ensuring that all children with disabilities have available to them a free appropriate public education and ensuring that the rights of children with disabilities and parents of such children are protected." *Winkelman v. Parma City School Dist.,* 550 U.S. 516 (2007) (citing 20 U.S.C. §§ 1400(d)(1)(A)-(B)). Under the IDEA, states that receive federal funding must make available free appropriate public education ("FAPE") to children with disabilities. 20 U.S.C. § 1412(a). The primary mechanism for delivering a free appropriate education is the development of a detailed instruction plan, known as an Individual Education Program ("IEP"), for each child classified as disabled. *Id.* § 1401(18).

The state must also implement the IDEA administrative process which allows parents to file a complaint and to participate in an impartial due process hearing. *Id.* § 1415(b)(6)(A); *id.* § 1415(f)(1)(A). Following exhaustion of the IDEA administrative process, the IDEA allows any party to challenge the findings and decisions made during the impartial due process hearing. *Id.* § 1415(i)(2)(A). A district court will only have subject matter jurisdiction over such a challenge when the plaintiffs have exhausted the IDEA administrative process. *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994).

## II. Background

### a. Procedural History

On April 4, 2011, R.D. and D.D., individually and on behalf of E.D., a minor,[3] (collectively "Plaintiffs") filed suit against Defendant Souderton Area School District ("Defendant") in the Court of Common Pleas of Montgomery County under the IDEA. (Dkt No. 1, Ex. A, Complaint [hereinafter Compl.].) Defendant removed to federal court on May 6, 2011 pursuant to 28 U.S.C. § 1441. (Dkt No. 1.)

At the request of the parties, the Court placed this case in suspense on June 15, 2011. (Dkt No. 6.) On September 25, 2014, Defendant moved to lift the stay and dismiss. (Dkt No. 7.) On October 31, 2014, the Court removed the case from suspense, granted Defendant's First Motion to Dismiss, but granted Plaintiffs thirty (30) days to amend their Complaint. (Dkt No. 9.) On November 29, 2014, Plaintiffs filed an Amended Complaint. (AC.) On December 12, 2014, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint. (MTD.) Plaintiffs filed a timely response. (Pl. Resp.)

### b. Factual Background

For the purposes of this Motion to Dismiss, the Court will construe all facts alleged in the Complaint as true. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed.1990)). Courts may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.*

Plaintiffs R.D. and D.D. are the parents of E.D. (AC ¶ 5.) E.D. suffers from a complex learning disability, including diagnoses with bipolar disorder, ADHD, ODD, PTSD, mood disorder, and anxiety disorder. (AC ¶ 24.)

Plaintiff E.D. is a student within Defendant's District. (AC ¶ 3.) Defendant is a local educational agency that must comply with the IDEA. (AC ¶ 2.) Defendant has a duty to provide students with FAPE pursuant to the IDEA. (AC ¶¶ 3, 14.) For several years, E.D.'s

---

[3] The Court notes that based on information provided in the original, verified Complaint, the Court is aware that the "minor" child is in fact nineteen-years-old. E.D.'s parents retain her IDEA-based rights through age 21. 20 U.S.C. § 1413(a)(1); 34 C.F.R. § 300.520. As such, and in keeping with the Amended Complaint, the Court continues to refer to E.D. as the "minor child."

class was "so far above the capabilities of E.D. that she became more likely to escape the environment of the classroom as she was not engaged in the instruction." (AC ¶ 9.) Throughout this time, Defendant was aware that E.D. had learning differences and was a child identified as eligible under the IDEA. (AC ¶ 25.)

E.D. began at an educational facility within Defendant's District. (AC ¶ 24.) On January 12, 2010, Defendant created an IEP for the minor child that placed her in an out-of-district facility known as Lakeside. (AC ¶ 24.) Lakeside only provided E.D. with a case manager, which was not sufficient to support E.D.'s educational needs given her disabilities. (AC ¶ 24.)

On November 9, 2010, Defendant removed E.D. from Lakeside. (AC ¶ 27.) Defendant did not conduct a manifestation determination hearing prior to the removal. (AC ¶ 4.) Rather than changing E.D.'s instruction or holding a manifestation determination hearing, Defendant instituted juvenile delinquency proceedings against E.D. for skipping classes. (AC ¶¶ 4, 9, 24.) Defendant alleged that E.D. was "ungovernable" because of "alleged conduct of blatant refusal to cooperate with staff, profane language and physical aggression and disrespect towards staff." (AC ¶ 27.)

The Juvenile Court sentenced E.D. to placement in a juvenile residential detention facility, Mapleton. (AC ¶ 8.) E.D. was involuntarily placed there for an entire school year. (AC ¶ 4.) At Mapleton, E.D. was exposed to children with violent and inappropriate behaviors, which further exacerbated E.D.'s maladaptive behaviors. (AC ¶ 29.)

After the minor child was removed from Lakeside, Plaintiffs R.D. and D.D. approached Defendant for help, which Defendant refused. (AC ¶ 30.)[4]

---

[4] The Court notes that in Plaintiffs' original, verified Complaint, Plaintiffs provided substantially more detail as to this point. In the original Complaint, Plaintiffs alleged that on February 5, 2011, Plaintiffs filed a Due Process Complaint against the Defendant. (Compl. ¶ 13, *E.D. v. Souderton Area School District*, ODR 1458/10-11 JS.) Plaintiffs alleged that the relief they sought in that Complaint included the establishment of a "compensatory education fund for the student." (Compl. ¶ 13.)

These facts cannot be considered by the Court for the purposes of deciding Defendant's Motion to Dismiss. An amended pleading supersedes the original pleading. *West Run Student Housing Asscs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 172 (3d Cir. 2013) (citing *Kelley v. Crosfield Catalysts*, 135 F.3d 1201, 1204 (7th Cir. 1998)). Facts not incorporated into the amended pleading are considered *functus officio*. *Id.* (quoting *Kelley*, 135 F.3d at 1205). Facts from an original complaint may only be considered "where the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Semulka v. Moschell*, 401 F. App'x 628, 629 (3d Cir. 2010) (non-precedential) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). Where a plaintiff's subsequent amended complaint does not reference facts listed in a prior complaint, those prior facts cannot be considered when reviewing defendant's motion to dismiss the amended complaint. Thus, in this case, the details of how Plaintiffs "approached Defendant for help" are not included in the Court's review.

Montgomery County Juvenile Authorities commenced legal action against Plaintiffs R.D. and D.D. for payment for R.D.'s residential treatment services. (AC ¶ 30.) Plaintiffs commenced this instant action in state court and sought joinder for reimbursement of these fees, among other claims. (AC ¶ 30.)

Plaintiffs' Due Process Complaint was resolved by a Resolution Meeting Agreement, signed by Defendant on June 20, 2011 and by Plaintiffs on June 16, 2011. (AC ¶ 31; Dkt No. 7, Ex. 2, E.D. – Souderton Area School District, Resolution Meeting Agreement, June 8, 2011, ODR No. 1458-10-11 JS [hereinafter Res. Mtg Agmt].)[5] In this Agreement, Plaintiffs agreed to the voluntary dismissal of their Due Process Complaint without prejudice. (Res. Mtg Agmt.) The Agreement stated that the Plaintiffs would have until August 31, 2011 to refile the claims. (Res. Mtg Agmt.) Plaintiffs never refiled their claims. The content of the Agreement promised the following relief:

1. The Parties agree to take all necessary steps to address the action being brought against the Parents for the costs associated with the Student's court-ordered placements related to the non-governability petition. The Parties agree to stay all pending proceedings asserted against each other regarding the issue of costs including actions in Family Court and the U.S. District Court.

2. The Parties agree to work cooperatively to develop a plan to transition the Student from the Mapleton program to an appropriate education program. The District will use its best efforts to expedite the interagency meeting related to her discharge form Mapleton. Upon her discharge from Mapleton, or sooner if necessary for discharge, the District will without delay convene an IEP meeting to develop appropriate educational programming and placement decisions in consultation with the BCBA Consultant.

3. If the recommended educational program and placement requires Student transportation, the District will provide it.

4. The District agrees to use Kim Kircher as the BCBA consultant to the educational program.

---

[5] While Defendant did not technically attach this document to its Motion to Dismiss, Defendant provided citation to the place in the record where Defendant had previously attached the appeal. (*See* Dkt No. 7-2, Ex. 2.) The Court finds that for all reasonable purposes, Defendant "attached" this document to its Motion to Dismiss. The Court may consider this document because it was attached to Defendant's Motion to Dismiss, its authenticity is undisputed, and Plaintiffs' claims rely on the document. *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196. Specifically, Plaintiffs demand that the terms of the interim settlement agreement continue. (AC ¶ 46.) Where the relief a plaintiff requests is the continuation of a contract, should defendant attach the contract to the motion to dismiss, it is appropriate for the Court to consider the contract for the purposes of reviewing the motion to dismiss.

7

   5. The District will cooperate with the Parents' application to the Penn Foundation for the Student.

(Res. Mtg Agmt.) Of particular note, this Agreement makes no reference to an end-date. (Res. Mtg Agmt.)

Following settlement, Plaintiffs asked Defendant to reimburse them for legal expenses, and to establish a compensatory education fund to age 24 for E.D. (AC ¶ 32.) Defendant refused. (AC ¶ 32.)

### c. Claims for Relief: Complaint v. Amended Complaint

Plaintiff's original Complaint was titled a "Complaint for Support to Souderton Area School District." (Dkt No. 1, Ex. A, Complaint [hereinafter Compl.] at 1.) In the opening paragraph, the Complaint demanded that "the defendant Souderton Area School District [] be solely liable, or liable over for indemnity and contribution, or jointly liable, on the claims made by the Montgomery County Juvenile Probation, and, for reimbursement of expenses in support thereof…" (Compl. at 1-2.)

The Complaint alleged various violations of the IDEA:

- "Since 2006, the defendant has failed to provide an appropriate public education, and has failed to identify and accordingly provide an educational program that meets all her needs…" (Compl. ¶ 8.)

- The minor child was placed "in the custody of juvenile authorities in violation of 34 C.F.R. 300.530, without holding a manifestation determination on the defendant's claim of ungovernability." (Compl. ¶ 9.

- The minor defendant was "deprived of her protections under several provisions, including 34 CFR 300 -300.537." (Compl. ¶ 10.)

- "The conduct of Defendant to file a report to authorities without a manifestation determination hearing was improper and in violation of the IDEA." (Compl. ¶ 12.)

At no point in the Complaint do Plaintiffs clarify a particular "Count" or "claim" by name. However, the Complaint ends with a clear demand for relief: "[1] an order against the defendant for all amounts charged by the county for the care of the minor child E.D. and [2] be solely liable to the county, or liability over to the Plaintiffs, jointly and severally, for indemnity and/or contribution, and/or jointly and severally liable on the claims made by county; [3] to order the release of the minor child into the care of her parents, R.D. and D.D., pursuant to 34 CFR 300.536; and [4] to award the Plaintiffs their costs and legal fees." (Compl. ¶ 22.)

8

In their Amended Complaint, Plaintiffs allege three counts. First, under Count I, Plaintiffs allege that (1) "[t]he conduct of Defendant to file a report to authorities without a manifestation determination hearing was improper and in violation of the IDEA," (AC ¶ 28.), (2) "[s]ince 2006, the defendant has failed to provide an appropriate public education, and has failed to identify and accordingly provide an educational program that meets all her needs, including the recently diagnosed bipolar disorder..." (AC ¶ 33.) Plaintiffs request "compensatory education equivalent to the denial of FAPE from the 2006 onward through the time of interim settlement agreement. Plaintiffs request that the terms of the interim settlement continue until Plaintiff E.D. is no longer a student enrolled in the Souderton Area School District (including having a BCBA supervise curriculum with those recommendations being implemented by Defendant), that the Plaintiffs be awarded monetary damages based on a denial of E.D.'s substantive due process rights, under the IDEA, 42 U.S.C. 1983 and Section 504 of the Rehabilitation Act, that Plaintiffs be awarded their attorneys' fees, and such further relief as the Court deems just." (AC ¶ 46.)

Second, under Count II, "Plaintiffs seek monetary damages based on the School District's failure to supervise and/or train staff and employees to guard against a denial of educational benefits to E.D." (AC ¶ 7.)

Third, under Count III, "Plaintiffs seek to have the entire decision of the Juvenile Court vacated..." (AC ¶ 8.) Despite this statement in the Introduction, in the section about Count III, Plaintiffs argue for relief based upon Section 1983, the IDEA, for an award of "monetary damages sufficient to compensate them for the value of the opportunities they were denied." (AC ¶ 60.) Plaintiffs argue that because of Defendant's actions, E.D. "was deprived of her life and liberty without due process." (AC ¶ 60.)[6]

---

[6] In their Response to Defendant's Motion to Dismiss, Plaintiffs further allege that Defendant's conduct "violated the Plaintiffs civil rights under … Article I, Section 1 of the Pennsylvania Constitution, the Federal Handicap Statute 20 U.S.C. § 1400, *et seq.*, the Vocational Rehabilitation Act, 29 U.S.C. § 794, and various provisions of the Pennsylvania Education Act." (Pl. Resp. at 2.) Allegations that Defendant's actions violated any of these federal and state statutes were not referenced in Plaintiff's Amended Complaint. The Court will not consider such allegations now.

**III.   Analysis**
    a.  Count I
          i.  IDEA

Count I is titled "Claims based upon IDEA." In Count I, Plaintiffs seek (1) to have the interim settlement continue until the minor child is no longer a student with Defendant; (2) monetary damages; (3) compensatory education equivalent to the denial of a FAPE; and (4) attorneys' fees and costs.

The first question for this Court is whether these claims relate back to the original Complaint. While Plaintiffs did not include requests for a compensatory fund under the IDEA or address the settlement agreement in their original Complaint's section on relief requested (most obviously because the settlement agreement had not yet been reached), Plaintiffs did specifically, and repeatedly, allege that the minor child's rights under the IDEA were being violated due to the placement of the minor child at Lakeside and the continued failure of Defendant to provide FAPE to the minor child. (Compl. ¶¶ 8-12.) The Court finds that Plaintiffs properly gave Defendant notice that Plaintiffs were seeking injunctive relief relating to Defendant's failure to provide FAPE to the minor child under the IDEA on the dates and in the scenario addressed in the Amended Complaint. *See Glover*, 698 F.3d at 146.

The next question is whether Plaintiffs' allegations, taken as true, can support a claim for relief. First, compensatory damages are not an available remedy under the IDEA. *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd of Educ.*, 587 F.3d 176, 186 (3d Cir. 2009). Thus, insofar as Count I seeks compensatory damages for violations of the IDEA, such claims are dismissed.

Second, Plaintiffs further request injunctive relief. Plaintiffs pray that "the terms of the interim settlement continue until Plaintiff E.D. is no longer a student enrolled in the Souderton Area School District..." (AC ¶ 46.) Upon review of the settlement agreement, (Res. Mtg Agmt), the Court finds that there is no end date listed for said agreement. Thus, the settlement agreement remains in force. There is no allegation that Defendant has violated the terms of this agreement. It does not appear from the face of the Amended Complaint that Plaintiffs are seeking to enforce the agreement pursuant to 20 U.S.C. § 1415(f)(1)(B)(iii)(II). Court intervention at this point does not seem appropriate. The Court may only adjudicate actual, ongoing controversies. *See Honig v. Doe*, 484 U.S. 305, 317 (1988). Here, there is no actual controversy over which this Court must rule. Insofar as Count I seeks injunctive relief as to the

continuation of the terms of the "interim settlement," such claims are dismissed for failure to state a cognizable claim.

Plaintiffs seek two additional types of relief: (1) a compensatory education fund, (2) attorneys' fees. (AC ¶ 46.) Such relief is appropriate under the IDEA. 20 U.S.C. § 1415(i)(3)(B)(i) (attorneys' fees); *Lester H. v. Gilhool*, 916 F.2d 865, 873 (3d Cir. 1990) (compensatory education); *see generally Chambers*, 587 F.3d at 185 (citing *A.W. v. Jersey City Publ. Schs.*, 486 F.3d 791, 798, 802 (3d Cir. 2007)). These claims properly relate back to the original Complaint. This type of relief was not addressed in the settlement agreement.[7] Thus, the next question for the Court is whether Plaintiffs properly exhausted their administrative remedies related to relief for these claims prior to filing this suit. The Court finds that they did not.

In terms of the process that they sought on their claims for a compensatory education fund and attorneys' fees, Plaintiffs' Amended Complaint explains that they "approached the Defendant for help for E.D., and they refused." (AC ¶ 27.) They also state that "they asked the school district for help on an ongoing basis to continue these services, [to] reimburse for legal

---

[7] In their Motion to Dismiss, Defendant argues that these claims should be dismissed because they are barred by the terms of the settlement agreement. (MTD at 7-8.) Defendant states that given that the settlement agreement was the negotiated resolution of the due process complaint, any relief not incorporated was bargained away by the parties during the process of settlement. Thus, argues Defendant, given that Plaintiffs are not appealing the settlement agreement (in fact, they are explicitly seeking the opposite, its continued implementation), Plaintiffs cannot seek any relief above and beyond the terms of the settlement agreement as such relief was explicitly excluded in order to reach the settlement. The Court disagrees.

A similar fact pattern emerged in *W.B. v. Matula*. In *Matula*, Plaintiffs filed an administrative action against the school district, and after ten days of hearings, entered into a settlement agreement. 67 F.3d 484, 490 (3d Cir. 1995), *abrogated on other grounds by A.W.*, 486 F.3d at 791 (overturning *Matula* on the grounds that section 1983 relief could not be based on the IDEA, but not addressing *Matula*'s holding regarding the impact of a settlement on future Court proceedings). Plaintiffs then filed a Complaint with the federal district court. *Id.* at 490-91. Defendants argued that the settlement agreement barred the action. *Id.* at 491. The Court held that in reviewing a settlement agreement, a district court must use a heightened standard, reserved for waivers of civil rights claims, wherein the Court looks at the totality of the circumstances surrounding execution of the agreement. *Id.* at 497. The Court ruled that summary judgment was not appropriate in part because there was a factual dispute regarding the nature and scope of the settlement agreement, and whether the agreement contemplated the type of relief sought in federal court. *Id.* at 498; *see also Adam C. ex rel. Dennis C. v. Scranton School Dist.*, 2008 WL 4411849, at *11 (M.D. Pa. 2008) (holding that a settlement agreement did not bar Plaintiff's claims because the agreement was silent as to Plaintiff's claims); *E.P. by P.Q. v. Union County Regional High School Dist. No. 1*, 741 F.Supp. 1144, 1149 (D.N.J. 1989) (holding that a parent was not collaterally estopped in the IDEA attorneys' fees action due to previous settlement agreement which did not address attorneys' fees). The Court holds that the settlement agreement here does not per se bar the claims sought in federal court.

expenses caused by their misconduct, and [to] establish a compensatory education fund to age 24 for E.D. to have to obtain remedial services. The Defendant instead chose to seek dismissal of these proceedings…." (AC ¶ 32.)

These details do not show exhaustion of the proper administrative remedies. The Court must then consider whether any exceptions to the exhaustion requirement apply. The "implementation exception" does not apply here because Plaintiffs do not challenge the implementation of an IEP. *Batchelor v. Rose Tree Medial School Dist.*, 759 F.3d 266, 280 (3d Cir. 2014). A court may excuse the exhaustion requirement where the factual record is otherwise fully developed and remand to the administrative process would be futile. *Matula*, 67 F.3d at 496. Generally, where a plaintiff has previously fully exhausted the administrative process, and there is extensive administrative fact-finding upon which the Court could rely, the futility exception applies. *See generally Batchelor*, 759 F.3d at 280-81 (collecting cases). This case does not lend itself to this exception. The IDEA administrative process is able to provide a suitable remedy for the harms alleged. Thus, the Court finds that Plaintiffs have not exhausted the administrative process and have not properly pled that any exception applies; thus the Court dismisses any of Plaintiffs' claims for a compensatory fund and attorneys' fees without prejudice.

### ii. Section 1983

Plaintiffs cannot sue under section 1983 for an IDEA or Rehabilitation Act violation. *A.W.*, 486 F.3d at 798, 805. Thus, insofar as Count I claims any relief for an IDEA or a Rehabilitation Act violation under section 1983, such claims are dismissed.

Plaintiffs can resort to section 1983 for constitutional violations, notwithstanding the similarity of such claims to those stated directly under the IDEA. *Id.* Thus, Plaintiffs can make section 1983 arguments based on constitutional arguments, rather than on the IDEA. However, such claims are held to the statute of limitations for section 1983 claims.

The length of the statute of limitations for a section 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. *Wallace v. Kato,* 549 U.S. 384, 387 (2007). The statute of limitations for a section 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons.Stat. § 5524(2); *see also Kost v. Kozakiewicz,* 1 F.3d 176, 189–90 (3d Cir. 1993). Federal law governs a cause of action's accrual date. *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir. 1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the

injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted)).

In their Response to Defendant's Motion to Dismiss, Plaintiffs make arguments that "[i]t is obvious that the deprivation of this student's liberty in a residential juvenile detention facility is a constitutional violation, which is actionable under 42 U.S.C. 1983." (Pl. Resp. at 4.) All of their arguments concern the removal of the minor child to a detention facility for ten months. (Pl. Resp. at 1-4.) This removal occurred on November 9, 2010. (AC ¶ 27.) Thus, the statute of limitations began to accrue on November 9, 2010. With a two-year statute of limitations, the statute of limitations ran out on November 9, 2012.

Plaintiffs' original Complaint was filed on April 4, 2011. (Compl.) The Amended Complaint was filed on December 2, 2014. (AC.) Thus, the question for the Court is whether the section 1983 claims in the Amended Complaint relate back to the Complaint. The Court finds that they do not. The Complaint contains absolutely no references to section 1983 or constitutional injury. In every mention of the detention of the minor child, the Complaint couches it in terms of violations of the IDEA. For example, the Complaint states that Defendant placed the minor child "in the custody of juvenile authorities in violation of 34 CFR 300.530," (AC ¶ 9), that the "minor child E.D. was deprived of her protections under several provisions, including 34 CFR 300.530-300.537," (AC ¶ 10), that the "conduct of Defendant to file a report to authorities without a manifestation determination hearing was improper and in violation of the IDEA." (AC ¶ 12.) The Complaint clearly alleges only that the minor child's rights under the IDEA were violated by the detention.

Thus, insofar as Count I states any claims for liability under section 1983 for violations of the minor child's constitutional rights, such claims are dismissed for failure to file such claims within the applicable statute of limitations.

### iii.  Rehabilitation Act

Plaintiffs' Amended Complaint requests relief under the Rehabilitation Act.  Plaintiffs' claims under the Rehabilitation Act identically mirror those allegations made under the IDEA, or, in the alternative, are brought as due process claims under section 1983.

First, Plaintiffs cannot bring a section 1983 claim based on the Rehabilitation Act. *See, e.g.*, *Chambers*, 587 F.3d at 189. Second, where Rehabilitation Act claims are based on

violations of the IDEA, the Rehabilitation Act claims are derivative of the IDEA claims. *J.T. ex rel. A.T. v. Dumont Public Schools*, 533 F. App'x 44 (2013) (non-precedential) (quoting *N.P. v. E. Orange Bd. Of Educ.*, 2011 WL 463037, at *10 (D.N.J. 2011)). "There appear to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition." *Mantula*, 67 F.3d at 492-93 (overruled on other grounds by *A.W.*, 486 F.3d at 799).

Exhaustion of the IDEA administrative process is also required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA, e.g. the Rehabilitation Act. *Batchelor*, 759 F.3d at 272 (citing 20 U.S.C. § 1415(l)). "This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute – e.g., section 1983, section 504 of the Rehabilitation Act, or the ADA." *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996). "In the wake of *Batchelor,* district courts throughout this Circuit have found non-IDEA actions subject to IDEA exhaustion requirements, where the asserted claims bear relation to the IDEA'S guarantee of a FAPE." *A.D. v. Haddon Heights Bd. of Educ.*, 2015 WL 892643, at *12 (D.N.J. 2015) (collecting cases).

Given the Court's holding that the IDEA administrative process has not been exhausted, Plaintiff's Rehabilitation Act claims are similarly dismissed without prejudice.

### b. Count II in the Amended Complaint does not relate back to the original Complaint and is time-barred. This count is dismissed.

All of Count II of the Amended Complaint was plainly not considered as part of their original Complaint. In the original Complaint, there are no allegations about failure to train or supervise. The original Complaint does not address any policy, practice, or custom of Defendant's.

Further, as this claim does not relate back, it is barred by the statute of limitations. As previously addressed, Plaintiffs cannot sue under section 1983 for an IDEA violation which is statutory in nature. *A.W.*, 486 F.3d at 798. Thus, failure to train resulting in a due process violation would instead only be actionable under section 1983 as a violation of the minor child's, or her parents', constitutional rights. The statute of limitations for section 1983 claims begins to accrue at the date of the injury. *Kach*, 589 F.3d at 634. The alleged injury here occurred on the date that the minor child was removed to a detention facility, on November 9, 2010. (AC ¶ 27.) Thus, the statute of limitations on any section 1983 claims expired on

November 9, 2012. Given that the claims in the Amended Complaint do not relate back to the original Complaint, these claims are time-barred. The Court dismisses all claims in Count II as time-barred.

### c. Count III in the Amended Complaint is dismissed under the *Rooker-Feldman* doctrine.

In Count III, Plaintiffs "seek to have the entire decision of the Juvenile Court vacated…" (AC ¶ 7.)[8] The Court does not have subject matter jurisdiction over an appeal of a Pennsylvania state court case that commenced prior to these proceedings. *Rooker*, 263 U.S. at 413 (1923), and *Feldman,* 460 U.S. at 462. There are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil Corp.*, 544 U.S. at 291-94). In this case, (1) due to the holding of a juvenile delinquency proceeding in state court, (2) the minor child, Plaintiff E.D., was involuntarily detained, (3) on November 9, 2010; and now, (4) Plaintiffs "seek to have the entire decision of the Juvenile Court vacated." (AC ¶¶ 4, 7, 27.) The *Rooker-Feldman* doctrine clearly applies. Count III is dismissed.

---

[8] The Court notes that Plaintiffs' Amended Complaint states that "At Count III, Plaintiffs seek to have the entire decision of the Juvenile Court vacated…" (AC ¶ 8.) The Section marked "Count III" in the Amended Complaint, however, is captioned "Claims Based upon Section 1983, IDEA, and Fundamental Principles Under Due Process" and demands relief for "monetary damages, attorneys fees and all other necessary and appropriate relief to redress the injuries they have incurred as a result of the Defendants' violations of their rights…" (AC ¶ 61.) Insofar as Count III alleges such claims for relief the IDEA, the Rehabilitation Act, or section 1983, the Court has previously addressed such claims *supra*.

**IV.     Conclusion**

Plaintiffs' claims for a compensatory education fund and attorneys' fees under the IDEA and the Rehabilitation Act are dismissed without prejudice. All other claims are dismissed with prejudice.

BY THE COURT:

/s/ C. Darnell Jones, II

_____
C. DARNELL JONES, II      J.